## COMMONWEALTH *vs.* JOHN BRADY.

The *St.* of 1849, *c.* 127, establishing a police court in Taunton, did not take away the juris
diction of justices of the peace, residing in Taunton, to try in Taunton offences com
mitted elsewhere within the county of Bristol.

The provision of the Rev. Sts. *c.* 87, § 33, that all warrants issued by a police court " or by
any justice of the peace in any of the said judicial districts, in any criminal suit or prose-
cution, shall be returnable before the police court of the district," does not apply to war-
rants issued by justices of the peace in a town in which a police court is subsequently
established by a statute which expressly defines its jurisdiction.

On the trial of an indictment for perjury, alleged to have been committed at the hearing
of a complaint for burning a ship, the district attorney introduced evidence that a reward
was offered by the owner of the ship, and by citizens of the town where the ship was
burned, for the detection of the incendiary, and was known to this defendant, and con--
tended that it was this reward which induced the commission of the alleged perjury.
*Held,* that evidence was then admissible for the defendant, that he came from his resi-
dence in another state, to give such evidence on that hearing, reluctantly, and at the
earnest solicitation of the insurers of the ship.

INDICTMENT for perjury at the trial of William P. Hood, in
Taunton, in 1854, before James P. Ellis, a justice of the peace
for the county of Bristol, on a complaint for maliciously setting
fire to a ship at Somerset in that county, upon which complaint
a warrant had been issued by said justice, returnable before him-
self; there being then* a police court in Taunton, of which there
was then a duly commissioned standing justice, and of which
said Ellis was special justice.

At the trial of this indictment in the court of common pleas,
before *Aiken,* J., the defendant requested the judge to instruct
the jury that Ellis, having received the complaint and issued the
warrant against Hood, was bound by law to make it returnable
before the police court of Taunton, and having made it returna-
ble before himself as justice of the peace, and proceeded in that
capacity, had no jurisdiction to hear and determine the matter
of the complaint, and upon such hearing to administer the oath

---

* The *St.* of 1849, *c.* 127, establishing a police court in Taunton, was repealed
by *St.* 1855, *c.* 305 ; and a police court again established in that town by *St.* 1858
*c.* 84.

to the defendant, and examine him as a witness. But the judge instructed the jury that Ellis had such jurisdiction.

The alleged perjury consisted in the defendant's testifying that, soon after the ship was on fire, he saw a person come out of the ship and run away, who, to the best of his opinion, was Hood. It was admitted that the fire was set by an incendiary; and the district attorney, for the purpose of proving that the defendant did not believe as he swore he did, introduced evidence that a reward was offered by the owner of the ship and by the citizens of Somerset for the detection of the incendiary, and that these offers of reward were known to the defendant · and contended that the hope of obtaining a reward was the motive which induced the defendant to swear as he did.

For the purpose of controlling this, the defendant offered evidence to prove " that the defendant, residing in New York city, came on to Taunton to testify against said Hood reluctantly, and on the urgent solicitation of the insurers of said vessel, and that no inducements were offered him by way of reward for coming and testifying in the case." But the court rejected the evidence.

The jury returned a verdict of guilty, and the defendant alleged exceptions.

*W. H. L. Smith,* for the defendant.

*J. H. Clifford,* (Attorney General,) for the Commonwealth.

DEWEY, J. 1. To sustain this indictment for perjury, the jurisdiction of the magistrate, before whom the alleged false oath was taken, is to be established. The examination in the case of William P. Hood, in which the defendant is charged with having perjured himself, was had by James P. Ellis, who, it is admitted, was then a justice of the peace for the county of Bristol, duly appointed and qualified to act as such. In his official capacity as a justice of the peace, he had cognizance of the complaint against William P. Hood, and jurisdiction to hear the case on the question of binding the party over for further proceedings in the court of common pleas, unless some particular disqualification is shown, or some limitation upon the jurisdiction he would have under the general law, regulating the jurisdiction of justices of the peace.

This limitation is supposed to be found in the *St.* of 1849, *c.* 127, establishing a police court in Taunton; and it is contended that, by force and effect of that statute, all criminal jurisdiction, for the purpose either of the preliminary examination and binding over the party to appear at the court of common pleas, or for final trial, if a case within the ordinary jurisdiction of justices of the peace, is exclusively vested in the police court of Taunton. That such is the effect of that statute, as to all cases of criminal offences alleged to have been committed in Taunton, is quite clear. § 2. But is it so as to the cases of crimes alleged to have been committed in other towns in the county of Bristol, and by inhabitants of such other towns?

The statute only gives a concurrent jurisdiction to the police court, as to such cases, with the justices of the peace of the county. It will not be contended that any justice of the peace, residing elsewhere than in Taunton, might not have taken jurisdiction of the case. But it is urged that the justices of the peace, residing in Taunton, are prohibited from exercising such jurisdiction, at least in Taunton. But if they may go to the adjacent towns where the cases occur, and hear and decide them there, there seems to be no practical evil in allowing the same justices to hear and decide such cases at their offices in Taunton. They are equally withdrawn from the police court, in the one case, as in the other. There are no positive words in this statute, restricting such trials, or taking from the justices of the peace power to act in Taunton in such cases. In this respect, it differs from some of the other acts establishing police courts; wherein it is provided that no suit shall be heard and determined by a justice of the peace in the town where the police court is established.

It is further said, that the general provisions in the Rev. Sts. *c.* 87 as to police courts already established, must be necessarily applied to police courts subsequently established, and particularly that § 33, which provides that " all warrants issued by the said courts, or by any justice of the peace in any of the said judicial districts, in any criminal suit or prosecution, shall be returnable before the police court of the district," must govern

the present case. This may be so as to matters not specially provided for in such subsequent acts; but where direct provision is made in the particular acts as to such jurisdiction, that must govern.

The fact, that Ellis was also a special justice of the police court, does not disqualify him from acting as a justice in all proper cases for a justice to act in; although he could not properly act in both capacities in the same case. If the case was pending before the police court, and he acted at all in reference to it, he must, of course, have acted as a special justice of that court. But if he originally took jurisdiction as a justice of the peace, in a case competent for such tribunal, he might continue to act therein as a justice of the peace. We find no difficulty in sustaining this verdict by reason of any want of jurisdiction on the part of Ellis.

2. But a further question arises upon the ruling of the court, excluding certain evidence offered by the defendant. It appears from the bill of exceptions, that the government, for the purpose of showing a corrupt motive, and a probable reason for supposing that the defendant had wilfully sworn falsely, had introduced evidence to show that a reward was offered by the owner of the ship, and by the citizens of Somerset, for the detection of the incendiary, and these offers of reward were known to the defendant. How such facts could furnish any ground for presuming guilt in the defendant, it is difficult to perceive. The same facts might have been shown against any other witness, and, if any evidence of perjury, would equally bear against him, and tend to excite suspicion of his guilt.

Against testimony of this doubtful character thus introduced, and for the purpose of weakening its effect, the defendant offered evidence to prove that he came from his residence in New York city, to testify in this case, reluctantly, and on the urgent solicitation of the insurers of the vessel alleged to have been set on fire by William P. Hood; and that no inducements by way of reward were offered to him, to come and testify in the case. This evidence, in the opinion of the court, ought to have been received. It was certainly quite as legitimate in its bearing

upon the case of the defendant, as that of the government, in reply to which it was offered. If the fact, that a reward was offered for the detection of the actual incendiary, was a circumstance that could be properly urged as showing the defendant a ready and willing witness, evidence tending to show that he came reluctantly, and on the urgent solicitation of the prosecutor, was not less proper, in answer thereto, as affecting his motives and purposes in appearing as a witness. For this reason, the verdict is to be set aside, and a *New trial had.*